UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

FILED

MAY 2 7 2025

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24 CR 00169 SNLJ |
| | ) | |
| DANNY PAUL CRAIG, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

### 1.    PARTIES

The parties are the defendant Danny Paul Craig, represented by defense counsel Shanna Surratt, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to the offense of Failing to Register as a Sex Offender as charged in the Indictment, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's failing to register as a sex offender on or about July 30, 2024, in Carter County, in the Eastern District of Missouri, of which the Government is aware at this time.

1

The parties agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The parties further agree that notice of any such request will be given no later than ten (10) days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

## 3. **ELEMENTS:**

As to charge of Failing to Register as a Sex Offender, the defendant admits to knowingly violating Title 18, United States Code, Section 2250, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

> *One:*      The defendant was required to register under the Sex Offender Registration and Notification Act (SORNA);
>
> *Two:*      The defendant traveled in interstate commerce; and
>
> *Three:*      The defendant knowingly failed to register or update her registration as required by SORNA.

## 4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

## A.      **Status as a sex offender**

2

On October 3, 2016, Danny Paul Craig was convicted of Child Exploitation in the Circuit Court of DeSoto County, Mississippi, Case Number CR2026-02213RCD, and was sentenced to serve a term of five years incarceration, to be followed by ten years post-release supervision. Craig is a convicted sexual offender and is required by law to register under the Sex Offender Registration and Notification Act (SORNA).

**B.    Residing in Carter County, Missouri; Failing to Register**

On July 23, 2024, the Desoto County (Mississippi) Sheriff's Office (DCSO), attempted to contact defendant Danny Craig at his registered address of Traveler's Inn, 2101 Stateline Road, Southaven, Mississippi.  Traveler's Inn staff advised that Craig was no longer living there and that he drove a small pickup truck.  On August 7, 2024, the Desoto County Justice Court issued an arrest warrant for Craig, charging him with Sex Offender Registration Failure. DCSO then requested the assistance of the U.S. Marshals Service (USMS), Northern District of Mississippi (N/MS) in locating and apprehending Craig. N/MS USMS accepted the delegation of apprehension, and Deputy U.S. Marshal (DUSM) Rachel Ratcliffe was assigned as the lead investigator.

DUSM Ratcliffe conducted a database search of Craig and determined Craig owned a 2004 Toyota Tacoma which was registered in his name.  On September 23, 2024, DCSO Investigator Andrews advised they interviewed a cooperating individual (CI) who had been in contact with Craig. While speaking with the CI, the CI volunteered to text Craig while investigators were present. In the text messages, the CI asked where Craig was staying on September 19, 2024, to which Craig replied that he was in Missouri.

On September 24, 2024, DUSM Ratcliffe reviewed a report prepared by the National Center for Missing & Exploited Children (NCMEC), Sex Offender Tracking Team (SOTT). The

report revealed a potential address associated with Craig, being the Landing Inn, 106 Olive St, Van Buren, Missouri.  DUSM Ratcliffe contacted the manager of the Inn who advised Craig was an employee but was let go a few weeks earlier. The manager advised she knew where he was staying because the maintenance manager of the Inn was with him that morning. She further advised that Craig was currently residing at Watercress Spring Campground near Van Buren, Carter County, Missouri. She further stated that Craig was living in a tent, possibly with a female.

A collateral lead was sent by DUSM Ratcliffe to the Eastern District of Missouri USMS. The collateral lead was assigned to DUSM Kelsey Snyder.   On September 24, 2024, DUSM Snyder contacted Carter County, Missouri Sheriff's Office (CCSO) regarding Craig.  DUSM Snyder provided CCSO with Craig's last known location, vehicle and other information provided by N/MS. CCSO responded to the Watercress Spring campground, but Craig was not located. Sheriff Alonzo Bradwell had observed Craig's vehicle earlier in the day leaving the area of Watercress Spring campground prior to the information being received.

On September 25, 2024, the Carter County, Missouri Sheriff's Office received a call from dispatch reporting an individual matching Craig's description was near the bus garage of the Landing Inn.  A deputy sheriff responded to the location where a male matching Craig's description was observed.  The deputy sheriff contacted the individual who stated his name was James Craig.  The deputy requested identification to verify the individual's identity. While pulling his identification out of his wallet the male corrected his statement and stated his name was Danny.  The deputy sheriff confirmed the individual to be defendant Craig.   The deputy sheriff contacted dispatch to determine if Craig had outstanding arrest warrants.  An arrest warrant was confirmed, and Craig was arrested and transported to the Carter County jail.

4

At the Carter County Sheriff's Office, Craig was advised of his Miranda rights. He waived his rights and agreed to speak with the officers. Craig told a deputy sheriff that he had been living and working in the Van Buren area since April of 2024. Craig stated he was going back and forth between Big Springs campground and Watercress Spring campground. Craig further explained the campgrounds would only allow an individual to stay on site for two weeks so that is why he was going back and forth. Furthermore, Watercress Spring campground is located 1600 feet from Van Buren School property. The entrance and exit of the Watercress Spring campground is located within 60 feet of Van Buren School.

On October 29, 2024, Eastern District of Missouri Deputy United States Marshal Korey Reichert reviewed employment records from the Landing Inn, which showed Craig as an employee from payroll dates July 27, 2024, through August 23, 2024. A joint investigation by the United States Marshals Service, DCSO, and CCSO, determined that Craig had traveled from the State of Mississippi to the State of Missouri. Further investigation revealed that Craig had traveled in interstate commerce, established residency in Missouri, and was living and working as an unregistered sex offender in Missouri.

As a previously convicted sex offender, Craig was required to register under the Sex Offender Registration and Notification Act within three business days after he moved to and started residing in Carter County, Missouri, in April, 2024. Craig had traveled from the State of Mississippi in interstate commerce to Carter County, Missouri, and resided in Carter County since at least April 30, 2024, much longer than three business days prior to July 27, 2024. Craig knowingly failed to register or update his registration as required by SORNA and Missouri state law in Carter County, in the Eastern District of Missouri.

## 5. **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not less than five years, nor more than life.

In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

## 6. **U.S. SENTENCING GUIDELINES: 2024 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. **Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is found in Section 2A3.5(a), and will be either a 16, 14, or 12, depending on whether defendant was required to register as a Tier III, Tier II, or Tier I sex offender.

**(2) Specific Offense Characteristics:** The parties have not reached agreement as to whether any Specific Offense Characteristics pursuant to Chapter 2 of the Guidelines should apply.

### b. **Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties recommend that three levels should be deducted pursuant to Section 3E1.1(a) and (b), if the total offense level is 16 or higher

(otherwise two levels should be deducted), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.   The parties agree that the defendant's eligibility for this deduction is based upon information presently known.   If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2)  Other Adjustments:**  The parties have not reached agreement as to whether any other adjustments pursuant to Chapter 3 of the Guidelines should apply.

**c.  Estimated Total Offense Level:**  The parties do not have an estimate of the Total Offense Level.

d.  **Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.   Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.   The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e.  **Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.   The parties may not have foreseen all applicable Guidelines.   The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**    The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2)  Sentencing Issues:**  The parties reserve the right to appeal any sentencing issue.

**b. Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

8

**b.  Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.    These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

**d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $ 100, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c).  Regardless of the

Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies). The Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

10

of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or

11

indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

27 May 2025
Date

Paul W. Hahn
Assistant United States Attorney

5-27-25
Date

Danny Paul Craig
Defendant

12

5-27-25
Date

Shanna Surratt
Attorney At Law